IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOSHUA E. METZ                                                                                           PLAINTIFF

V.                                            NO. 14-5306

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                     DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Joshua E. Metz, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his application for DIB on October 31, 2011, alleging an inability to work since March 1, 2011, due to back injury and "separate left shoulder." (Tr. 123-126, 137, 141). An administrative hearing was held on January 31, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 26-62).

By written decision dated June 6, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – musculoskeletal disorder (back disorder, lumbar degenerative disc disease) and obesity. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that

Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except as follows: The claimant is able to frequently lift and/or carry ten pounds and occasionally twenty pounds, sit for a total of six hours in an eight hour workday, and stand and/or walk for a total of six hours in an eight hour workday. The claimant can operate equipment, but he cannot drive as part of work.

(Tr. 16). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would be unable to perform his past relevant work, but there were other jobs Plaintiff would be able to perform, such as lamp shade assembler, shoe buckler/lacer, molding machine operator, and riveting machine operator. (Tr. 20-21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 8, 2014. (Tr. 3-6). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 8). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's

decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s)

prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**IV.   Discussion:**

Plaintiff raises the following issues in this matter:  1) Whether the ALJ erred because he did not properly evaluate Plaintiff's mental impairment, pulmonary impairment, and upper extremity impairment; and 2) Whether the ALJ erred in his RFC assessment. (Doc. 11).

**A.  Severe Impairments:**

Plaintiff argues that the ALJ committed error because he did not properly evaluate his mental impairment, pulmonary impairment, and upper extremity impairment.  An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § § 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

The Court first notes that Plaintiff failed to allege any mental impairments in his application documents, which is significant. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).  In his decision, the ALJ found that Plaintiff's alleged mental disorder had no more

4

than a minimal effect on Plaintiff's mental ability to do basic work activities and was therefore nonsevere. (Tr. 15). He found that the evidence only documented no more than mild limitations in his activities of daily living, mild difficulty with social functioning, and mild limitations in concentration, persistence, or pace. (Tr. 15-16). The ALJ noted that Plaintiff resided independently, cared for his two children, maintained contact with family members, attended medical appointments, drove a car, shopped in stores, and was able to perform work activities when he has been employed. (Tr. 16). There is no indication in the medical records that Plaintiff suffered from any mental impairment until Dr. Mark A. Bonner, Plaintiff's treating physician, completed a Mental RFC Assessment on January 19, 2013, wherein he found Plaintiff had no useful ability to function on a sustained basis in several different categories. (Tr. 434). In fact, only four months prior, on September 20, 2012, Dr. Bonner reported that Plaintiff had no unusual anxiety or evidence of depression. (Tr. 459). On February 2, 2013, Plaintiff saw Kristen Speer, LPC, from Ozark Guidance, who diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood, and gave him a GAF score of 60. (Tr. 493). Ms. Speer is not an acceptable medical source, and there is simply very little evidence, if any, in the record that Plaintiff was unable to work because of a mental impairment. The ALJ properly found Plaintiff did not have a severe mental impairment.

Regarding Plaintiff's pulmonary impairment, the ALJ addressed the Spirometry testing that was conducted by Dr. Gary L. Templeton on March 25, 2013, as follows:

> Spirometry testing by Dr. Gary L. Templeton, M.D. on March 25, 2013, showed mild restrictive lung disease, but no reactive airway disease. There is no credible medical evidence to suggest that the claimant's lung conditions resulted from exposure to smoke from a house fire as the claimant has alleged.

5

(Tr. 18-19)(exhibit citations omitted). Additionally, there is no evidence in the record indicating Plaintiff experienced any limitations due to a pulmonary impairment.

The Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's pulmonary impairment was not severe.

With respect to Plaintiff's alleged upper extremity impairment, Plaintiff argues the ALJ erred because consultative examiner, Dr. Michael R. Westbrook, opined in a Medical Source Statement of Ability to do Work Related Activities that he had 25% reduced grip strength in his left hand and had limitations with handling, fingering, and reaching, and the ALJ did not incorporate those limitations in his RFC assessment. In his General Physical Examination, conducted on March 12, 2013, Dr. Westbrook found the ranges of motion in all of Plaintiff's extremities were within normal limits. (Tr. 478). On April 3, 2013, Plaintiff's treating physician, Dr. Bonner, noted that Plaintiff's extremities appeared normal, with no edema or cyanosis. (Tr. 500). Further, on January 11, 2012, Dr. Stephen A. Whaley, non-examining consultant, found no manipulative limitations were established. (Tr. 378). The ALJ noted the manipulative limitations Dr. Bonner placed on Plaintiff in his Medical Source Statement dated January 9, 2013. (Tr. 18). However, the ALJ accurately concluded that Dr. Bonner's evaluation was not consistent with his treatment records, and that a conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration. (Tr. 18, citing Anderson v. Astrue, 696 F.3d 790 (8th Cir. 2012)).

The Court finds there is substantial evidence to support the ALJ's conclusion that Plaintiff's upper extremity impairment was not severe.

**B. Credibility Analysis:**

6

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The Court finds there is substantial evidence to support the ALJ's credibility analysis.

**C.  RFC Assessment:**

Plaintiff argues that the ALJ erred in concluding he could engage in light work.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v.

7

Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

As stated earlier, the ALJ found that Plaintiff had the RFC to perform light work with certain limitations.  In making such determination, the ALJ considered Plaintiff's medical records as well as the opinions of treating and non-treating physicians.  He noted the results of the MRI scans of Plaintiff's lumbar spine, and Dr. Konstantin V. Berestnev's recommendation of physical therapy. (Tr. 17).  The ALJ also discussed Dr. James B. Blankenship's observations, dated August 11, 2011, that Plaintiff had completed his physical therapy although there were inconsistencies with his effort. (Tr. 17).  Dr. Blankenship recommended Plaintiff see Dr. David Cannon for injections, and on June 16, 2011, Plaintiff received left L4-5 and L5-S1 facet injections from Dr. Cannon. (Tr. 287).  The ALJ also discussed the fact that Dr. Blankenship did not feel that surgical intervention would be of long-term benefit to Plaintiff, and thought that a good core strengthening and continued exercise program would be appropriate. (Tr. 17, 321).  Dr. Blankenship further opined that Plaintiff could return to work at a medium classification of work as defined by the Department of Labor. (Tr. 322).  Dr. Blankenship added: "This would put a permanent weightlifting restriction on him of 50 pounds occasionally with the ability to lift up to 25 pounds on an unlimited basis. " (Tr. 322).

The ALJ also discussed medical records relating to Plaintiff's left shoulder and left knee, and the fact that x-rays of both showed no fractures or dislocations. (Tr. 18). The ALJ also discussed Dr. Mark Bonner's records, Dr. Whaley's assessment, Dr. Westbrook's assessment, Dr. Honghiran's assessment, and Dr. Templeton's assessment, gave them differing weights, and gave good reasons for the weight he gave such opinions. (Tr. 18-19).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the opinions of the physicians.

### D. Hypothetical Question:

Plaintiff also argues that the ALJ's hypothetical question to the VE did not match his RFC and did not incorporate all his alleged limitations. The ALJ proposed the following hypothetical question to the VE:

> Q: If we assume that the medication is going to interfere with alertness, safety in that area, can you describe unskilled, sedentary, and light work that would not be at risk as far as operating dangerous equipment, working at heights and that sort of things?
>
> A: Yes, your honor.
>
> Q: Give me a description of a few of those.
>
> A:  At the sedentary level, sedentary unskilled production and assembly workers using as two examples lamp shade assembler,… shoe bucklers and lacers, …
> At the light level, light unskilled machine tenders using as two examples compression molding machine tender, … riveting machine operator II, …

(Tr. 59-60).

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the

9

Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing the jobs of production and assembly worker (lamp shade assembler and shoe bucklers and lacers) and compression molding machine tender and riveting machine operator II. <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 3rd day of December, 2015.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE